CARROLL (GRAMMER v.). See Case No. 5,681.

## Case No. 2,455.

CARROLL et al. v. The LEATHERS.

[1 Newb. 432.] [1]

District Court, E. D. Louisiana. May, 1853. [2]

ADMIRALTY — RELEASE OF LIBELED VESSEL ON STIPULATION—RIGHTS OF SURETY — OF LIENORS—MATERIALS AND SUPPLIES—SUBROGATION.

1. Where a surety on a bond or stipulation given in the admiralty, pays the money in accordance with the decree of the court, he is entitled to be subrogated to the rights of the original libelants; but he cannot be paid by preference out of the proceeds of the boat which has been sold under his execution, while there are liens already existing.

[Cited in The Madgie. 31 Fed. 928: Roberts. v. The Huntsville, Case No. 11,904.]

2. The moment the boat was released upon a stipulation, from the custody of the law, she was also released from the lien in favor of the original libelants, and they could only have recourse upon the stipulation. The boat was at liberty to go where she might think proper, and quoad the claim of the original libelants, was at liberty to contract de novo, debts which might operate as liens in admiralty or under the local law.

3. The claimants of a boat libeled for salvage, upon giving a stipulation for her release from the custody of the law, take her cum onere, subject to pre-existing liabilities.

4. The surety on a stipulation who has paid money for his principal, can only be regarded as an ordinary creditor of the principal, upon whose personal credit he relied when he bound himself for the payment of the obligation. His right to be paid out of the proceeds of a boat which has been sold under his execution, must be regarded as subordinate to the claims of the interveners who have established their liens.

5. It is the surety's own fault if he fails to exact of his principal a separate stipulation to indemnify him against loss; and although the rules in admiralty are silent with regard to this form of stipulation, yet as a familiar and well established part of the civil law and general admiralty practice. the court would not hesitate upon the application of the surety to direct it to be given.

6. When supplies are furnished to a vessel in her home port, the validity of the liens must be determined by the local law; but when they have been furnished in a foreign port, or in the port of a state other than the one to which the vessel belongs. the liens are to be regarded as admiralty liens. which are unaffected by any limitations of the local law.

[Cited in The General Tompkins. 9 Fed. 621; The Rapid Transit, 11 Fed. 332.]

7. If A. hold a lien against a vessel for materials furnished, and the master request B. to

[1] [Reported by John S. Newberry, Esq.]
[2] [Affirmed by the circuit court (case not reported).]

pay the account of A., the lien originally held by the latter is not by such payment transferred to B., and he has no right of action in rem in the admiralty.

[In admiralty. Libel by D. R. Carroll, against the steamboat T. P. Leathers, R. W. Adams, and Relf and Villarubia, interveners.]

Durant & Hornor, for libelant Carroll.

Benjamin, Micou & Finney, for Relf and Villarubia, interveners.

McCALEB, District Judge. In the case of Montgomery v. The T. P. Leathers [Case No. 9,736], this court awarded a salvage compensation of $15,000, free from all costs and charges; and for this sum together with costs, making an aggregate amount of $15,334.60, an execution issued against the principal and surety on the bond, which was given by the claimants when they obtained the release of the boat from the custody of the law. The present libelant as surety, was compelled to pay into court the whole sum demanded under the execution, and upon the motion of his proctors was subrogated by an order of court to all the rights of the original libelants. He then applied for and obtained an execution against his co-sureties and the owners of the boat, which was levied upon to satisfy that proportion of the amount awarded to the original libelants, and due from her.

It is proper that I should state that the judgment in favor of the salvors, as it was entered by the clerk, so far as it gives a lien upon the boat, goes further than the law or the practice of the court will authorize. As soon as the stipulation was filed by claimants, and the boat released from custody, the lien in favor of the libelants was discharged. But as that judgment can only conclude those who were parties to the original suit, the clerical error committed in entering it upon the record, cannot be permitted to affect the interests of those engaged in the present controversy. The proper remedy, after the boat was released, was upon the bond or stipulation; and the record shows that this remedy was regularly pursued. Having paid the money as surety, D. R. Carroll could at once claim to be subrogated to the rights of the original libelants. This part of the proceedings, has been strongly attacked by the proctor of one of the intervening parties who asks to be paid in preference to the surety on the bond. It is contended that no such right of subrogation accrued to the surety, and that the sale of the boat under his execution was totally irregular. If this be so, then the intervener is in the act of asserting a claim by preference, to the proceeds of a sale, which he himself contends was made without the authority of law. But the order of subrogation was regular, and fully authorized by the juris-

prudence of the admiralty tribunals, which are governed on this subject, not, as the proctor has contended, by the principles and rules which are administered in courts of equity, but by the well recognized doctrines of the civil law code. "The practice of the court," says Judge Ware, in Lane v. Townshend [Case No. 8,054], "is the law of the court, and in the absence of any authoritative decisions showing what that is on a particular point, we must resort to the general rules of admiralty practice, and the principles of that jurisprudence from which it is derived."

By the act of congress of 1789 [1 Stat. 93, § 2], regulating the practice of the courts, the forms and modes of proceeding in causes of admiralty and maritime jurisdiction, are directed to be "according to the course of the civil law;" and in that of 1792 [1 Stat. 276, § 2] they are ordered to be "according to the principles, rules and usages of the courts of admiralty as contradistinguished from courts of common law;" subject to such alterations as courts in their discretion should deem it expedient to make. The sections quoted by the learned proctor from 1 Story, Eq. Jur. (section 4996, etc.) show clearly the rules of the chancery courts; but in the same volume, section 500, we have presented to us in language not to be misunderstood, the far more liberal and comprehensive doctrine which pervades the Roman law in reference to this subject. Not only is the surety by that law entitled in such cases to the benefit of all the collateral securities taken by the creditor; but he is also entitled to be substituted as to the very debt itself, to the creditor, by way of cession or assignment. And upon payment of the debt by the surety, the debt is in favor of the surety. treated not so much as paid as sold; not as extinguished, but as transferred with all its obligatory force against the principal. After quoting at length from the Digest of Justinian the provisions of the Roman law, which support this view of the subject, Mr. Justice Story says: "We have here the doctrine distinctly put, the objection to it stated, and the ground upon which its solution depends, affirmed. The reasoning may seem a little artificial; but it has a deep foundation in natural justice. The same doctrine stands in substance approved in all the countries which derive their jurisprudence from the civil law." 1 Story. Eq. Jur. § 500; Dig. lib. 46, tit. 1, l. 17. 36; Poth. Pand. lib. 46, tit. 1, n. 46; 1 Dom. B. 3, tit. 1, § 3, arts. 6. 7. The Louisiana Code (article 2157) declares that "subrogation takes place of right for the benefit of him who, being bound with others or for others, for the payment of the debt, had an interest in discharging it."

Thus far then I have no hesitation in saying that the proceeding on behalf of the subrogated surety was regular and proper. But

the question now to be determined is, can he be paid by preference out of the proceeds of the boat sold under his execution while there are liens already existing? After a very full examination of the questions discussed at the bar, I am of opinion that no such preference can be allowed. The order of subrogation gave him all the rights of the original libelants. But the moment the boat was released upon bond, she was also released from the lien in favor of the salvors, and they could only have recourse upon the bond. The boat was at liberty to go where she might think proper, and quoad the claim for salvage was perfectly free to contract obligations which would subject her de novo to liens in admiralty or to privileges under the laws of the state. Even as to liens existing prior to the filing of the libel for salvage, the claimants, upon giving a stipulation for her release from the custody of the law, received her, cum onere, subject to all such pre-existing liabilities. Conk. Adm. 770, 771; Ben. Adm. §§ 497, 447; 2 Mason, 57 [U. S. v. Sixteen Packages, Case No. 16,-303]. The surety, therefore, can only be regarded in the light of an ordinary creditor of his principal, upon whose personal credit he relied, when he bound himself for the payment of the bond. His right to be paid out of the proceeds of the boat which has been sold under his execution, must be regarded as subordinate to the claims of the interveners, who have established their liens. If any injury shall eventually accrue to him in this case, the court can only express regret at its inability to relieve him. It is his own fault if he has failed to exact of his principal a separate stipulation to indemnify him against all loss. And although the rules are silent with regard to this form of stipulation, yet as a familiar and well established part of the civil law and general admiralty practice, the court would not have hesitated, upon his application, to direct it to be given. Conk. Adm. 462, 463. He has the same right to proceed against the boat which has been seized and sold in this case, as against any other property belonging to his principal; but it is the right of an ordinary, and not of a privileged creditor holding a lien.

I shall now proceed to consider the different claims of the intervening libelants. In reference to supplies, it is only necessary to state as a general principle, that where they have been furnished in the home port of the vessel, the validity of the liens must be determined by the local law. But where they have been furnished in a foreign port, or in the port of another state than the one to which the vessel belongs, the liens are to be regarded as admiralty liens which are unaffected by any limitations of the local law. The home port of this boat is Memphis in the state of Tennessee. The local law of that state (St. 1833, c. 35, § 1) gives a lien on steamboats for any debt contracted by the master, owner, agent or consignee, for any work done or materials or articles furnished for or towards the building, repairing, fitting, furnishing or equipping the same, and for wages due to the hands, provided suit shall be commenced therefor within three months from the time the work is finished, or materials, or articles are furnished, or the wages fall due. The supplies furnished in the port of Memphis will be tested by this law. Those furnished in the port of New Orleans, will be regarded as falling within the principles of the general maritime law. The lien they give is unaffected by the limitations of the local law as to the time within which the action is to be brought.

One of the claims asserted by Relf & Co., has been resisted upon the ground that it was for money not actually loaned to the master for the necessities of the vessel, but paid to Filkins and others for materials furnished and repairs done upon her by the authority of the master. The evidence shows that the account of Filkins and others was settled by Relf & Co., at the request of the master; and it is difficult to draw a distinction between a claim for money so paid and one arising from a direct loan to the master for the specific purposes to which the money was really appropriated. In either case, it would seem to be an advance of money for the necessities of the boat, made at the request of the agent legally authorized to contract for the materials and repairs. But the question arises, upon what principle of the maritime law can this court authorize the payment of the claim? It is money advanced for the necessities of a vessel in a foreign port, and the lender has failed to acquire a lien by taking a bottomry bond. The fair presumption then is, that he made the advance upon the personal credit of the master and owners. If the claim be grounded upon the law of the state, it must appear, that the money was lent to the master for the necessities of the boat during the last voyage. There is no evidence to show that the claim falls within the particular provision of the Code (article 3204, No. 7), which must be construed strictly. The court has no authority to substitute Relf & Co., in the place of Filkins and others, to whom the money was paid, so far as to transfer to them the lien which the latter held against the boat. I feel compelled, therefore, to reject this claim, and leave the interveners, Relf & Co., to their remedy against the master and owners. Harper v. New Brig [Case No. 6,090]. The claims will now be referred to Robert M. Lusher as commissioner in admiralty, to be arranged in accordance with this opinion, and to be presented in the form of a report which will serve as the basis of a final decree.

NOTE [from original report]. This decree was, on appeal to the circuit court, affirmed by Mr. Justice Campbell.